The first point in order to be considered is whether the land in dispute be included within the boundaries of Waddle's patent. If it be, then other points will arise to be considered; if it be not, then *Page 249 
the dispute is at an end. There is full proof that the land claimed is within the boundaries of the patent under which the defendant claims. This is not doubted by any one; it is not disputed by the plaintiff. For them to recover, it is necessary to show a title superior to that of the defendant. Their patent is for land lying on the same stream, very probably for a part of the land in dispute. One of the chain carriers, in making Spikes' survey some weeks after, saw and showed to Spikes a line then recently marked, running through the land contained in Spike's patent, and, as he describes it, must have run somewhere between the boundary of Spikes' patent and the line now described in the plat, and claimed to by the plaintiffs. That line has been since spoken of and admitted in conversation by the defendant. When Spikes sold, he refused to warrant the land in dispute, because of Waddle's claim.
The Court then enumerated the other circumstance given in evidence relative to the corner pine, and the other line spoken of at the bar, and concluded this point by saying it is not the province of (318) the Court to draw any conclusions with respect to this line, whether it existed, or where it is. Such conclusions can only be drawn by the jury. The Court only recapitulates the evidence in the presence of the counsel, to assist the memory of the jury, not for the purpose of directing them to lay stress upon this or that part of the testimony. Should the Court deliver an opinion with respect to the evidence, the jury are only bound by it should that opinion coincide with their own, drawn from the evidence they have heard. Should the jury, however, in the present case believe that Waddle's patent covered the lands in dispute, then the next circumstance to be considered is which of these two patents is entitled to preference. They are both dated on the same day. Waddle's is numbered with the number 4, and Spikes' with the number 73; but Spikes' survey was made several months before Waddle's.
The rule that hath hitherto prevailed is that the patent or grant of the first date shall be preferred. There is no other evidence of title by appropriation of lands but that of the grant. He who first obtains his grant without fraud, obtains title; and from that moment may exclude all others from the possession. We cannot be influenced in determining a point of preference by the first survey or the first entry, or the first payment of money for the land. Any of these circumstances, or all of them together make no title. If the grant does not follow, they signify nothing; and when it does follow, they cease from the moment of its execution to be of any consideration. That, and that only, creates the title; and that only is to be consulted where the question of title arises between different claimants. Supposing this rule not to have been founded upon propriety at first, it would be attended with terrible *Page 250 
consequences to alter or impair the force of it at this day. Rules of property, where they have once become fixed and known, and to be generally acted under, should never be broken in upon but for reasons of the most urgent necessity, and then only by the Legislature. In such instances it is of much more consequence that the rule should be certain and notorious than that it should be conformable to strict notions of justice. Should we decide by preferring the grantee who had his land first surveyed, it might perhaps serve the purposes of a decision well enough in the present instance; yet many cases might occur where the fact (319) of the first survey could not be ascertained, as in the case of old grants issued before the practice of annexing plats began, and in cases of new grants, where the plat annexed to either of them was severed from the grant and lost. In all such instances it would be necessary to adopt another rule of decision. It is better to follow one that will answer for the decision of all cases which may arise — by adhering to the old rule of preferring the grant first perfected; and, when they are dated on the same day, of preferring that grant which from some circumstances apparent on the face of the deed may appear the best entitled to it.
In the present case it appears in the fact of Waddle's patent that it was numbered with the number 4, whereas Spikes' was numbered with the number 73; from whence the strong presumption is that Waddle's grant was first completed, and that it was numbered in the same order with respect to the other deed in which they were severally completed; and if any other circumstance of equal weight should appear in the face of the grant, it should have equal influence in deciding the preference. If Waddle's grant be entitled to preference, then it will be necessary to consider whether Spikes or those claiming under him have acquired a title by possession under the act of limitations.
It is urged that the possession of the ax-enterer, as he is called, of whom Spikes purchased the location, it to be taken into computation, and, next, that the possession which Spikes had by his cattle is to be reckoned. We will consider them, separately, and for that purpose it is proper to state briefly the true import and intent of the act of limitations, so far as it regards the landed estates of the country. That act had two objects in view — the one and principal object was to fix upon a mode of settling disputes between different claimants of the same lands under different grants or titles.
The Legislature considered, where one of the claimants settled upon the land, and continued on it seven years, with the reasonable expectation of enjoying it in fee that his deed or grant gave him, that it was more agreeable to justice and the policy of an infant country that wanted *Page 251 
settlers to confirm the title of such a possessor than to suffer him to be turned out of possession by another who had no other merit than that his grant was first dated. The term of seven years was fixed upon by the Legislature for that purpose. A prior patentee who would not enter during the space of seven years, when the subsequent patentee, and those claiming under him, were in the actual possession, giving open and public notice of his claim, was by that law deprived of (320) his title forever. He shall not take advantage of an industrious settler and turn him off, after he has improved the land for seven years together; but then in order to gain a title by possession under this act, these circumstances must concur. He must be possessed of land which hath been actually granted; a possession of vacant lands will not do, unless attended with such circumstances as required by the late act of Assembly, for limiting the claim of the State; he must take possession with a belief that the land possessed is his own, as under a patent or deed, under some patentee; he must take possession with such circumstances as are capable in their nature of notifying to mankind that he is upon the land, claiming it as his own, as in person or by his tenant; this notorious possession must be a continued possession; a secret taking possession and not continuing it, as it cannot answer the purpose of notoriety to adverse claimants, cannot extinguish their claim for not having been put in in due time.
The other object of the act was to quiet the possession of such persons as before the passing of it had taken irregular conveyances, not strictly supportable by law, but yet fair, and for valuable considerations. This is provided for by the first clause of the act, and need not be enlarged upon now. The case before the Court is no way affected by it.
To apply these rules to the present case. The possession of the ax-enterer was of vacant and unappropriated lands, and is not a possession within the purview of the act. Such possession could operate, if at all, only against the King or the Lords Proprietors, not as the act meant, against another individual claiming under them by another grant or deed. It is not the possession of a settler having a belief that the land he settled upon was his own. As to the possession which Spikes kept by his cattle, that it is not such possession as is calculated to give notice to the adverse claimant that his land is occupied and claimed by another. Cattle may be a long time ranging upon land without its being publicly known whose they are, or that they were put upon the land by their owner, or that he meant to claim it; but if a man settles upon the land by himself or tenants, and continues that possession, builds a house, or clears the land and cultivates it, his claim then becomes notorious, and gives fair notice to the adverse claimant to look to his title. As to the *Page 252 
circumstance of Spikes having once taken possession of the land, and continuing there some time, and then leaving it again: a single act of taking possession, and then leaving the land, will not do; for then (321) every man who has a patent or deed for land, and lives at a distance from it, is in danger of losing his title by some other person having a color of title, making a secret entry upon it and at the expiration of seven years afterwards setting up that possession as a title. Were this the law, no man would ever be secure of his title for lands he did not actually reside upon, either by himself, his tenant or agent. The possession that is capable of ripening into title must be notorious, and continued for seven years without entry, claim, or action on the other side. As to the remaining possession that Spikes had, it is stated that about the beginning of 1770, or thereabouts, Spikes, or the person that claimed under him, took actual possession of the land in question, built a house upon it, cleared a field, and continued the possession down to the present day; and that, on the other side, Waddle had no actual possession of the land included in his patent, or of any part of it, and that he was in this country when the adverse actual possession commenced, and for four or five years afterwards, when he removed to Europe. It is here proper to observe that from 6 March, 1773, to 1 June, 1784, the whole intervening time is struck out of the computation of time under the act of limitations, by different acts of the Legislature made in the time of the war and since, and is not to be regarded; and where a man is beyond seas when his title accrues, and is of full age, he is allowed eight years to put in his claim against an adverse occupant. In the present case Mr. Waddle was in this country when the act of limitations first began to run upon him, that is to say, when actual possession was first taken and continued by the adverse claimant; and Mr. Waddle resided here for some years afterwards, and until after the discontinuance of our Superior Courts in 1773, so that at the time he went to Europe the act had run upon him three years; and if we connect 6 March, 1773, with 1 June, 1784, excluding the intermediate time, and compute on till the time of commencing this action, which was some time in 1794, there will be a space of computable time of thirteen years and more between the first taking of actual possession and the commencement of this action.
It is urged, however, that there are two circumstances to interrupt the running of this time, Waddle's being beyond sea, and then his death, and the infancy of his sons to a period within three years before (322) the commencement of this action. These circumstances will not hinder the running on of the statute, when it has once begun to run. The act of limitations regards the interest of both parties; it provides the term of seven years to the end the plaintiff's claim be not *Page 253 
destroyed by too short a time; for the safety of the possessor, it provides that his possession shall not be disturbed after seven years, unless there are strong reasons founded in justice to the contrary, and these are pointed out in the exceptions it makes to the general rule established by the act, as coverture, etc.; but these provisions would be easily frustrated if a man after the act has run upon him almost the whole seven years could defeat its operation by going beyond sea; and the act would have but little effect towards quieting titles and possessions if, after a man had been improving and cultivating the lands for almost seven years, that possession would be all rendered nugatory by the death of the adverse claimant, or by coverture, imprisonment or the like, before the time had been actually completed. We may easily suppose a case where the act of limitations would not be of any assistance at all to a possessor as the Legislature intended it should be. A man improves land and settles upon it, and continues the possession for seven years, lacking a few days; the adverse claimant dies, his heir but just born, but a few days before his arrival to the age of 24 (for infants have three years allowed them after their infancy) dies, leaving his heir but just born also. Where, contrary to the plain meaning of the act, the possessor could not acquire a title after fifty-four or fifty-five years continued possession. As such cases must frequently happen, the law will not allow itself to be defeated by making such use of its exceptions. The computation of time shall not be suspended by the occurrence of any of these circumstances which would have prevented its attaching had the title of the party out of possession accrued during the time of their existence, as infancy, imprisonment, etc.; but where the title comes to persons under such incapacities, and that title is already worn away by the attrition of several years time, with the quality of still wearing away, they must take it as they find it, with its disadvantages as well as with its advantages, and must use the same diligence to prevent a total dissolution of title as the ancestor or person from whom they claim was bound to use. And if this reasoning will apply to the cases of these persons whose hapless situation is not brought on by their own means, as infants, persons insane, and the like, much more will (323) it apply to the cases of those who seem to act as if they intended to avoid the operation of the act, as a person imprisoned, he that removes beyond sea, or as a woman that marries after the act begins to attach. These voluntary acts of theirs ought not in reason to defeat the possessor of the benefits intended for him by the law of the country.
The conclusion resulting from this mode of considering the subject are that the title of the plaintiff in the present case is barred by the defendant's possession. There was a verdict and judgment for the *Page 254 
defendant accordingly, and the motion for a new trial was not made. Vide
Eq. Ca. Abr., 9; 2 P. Wil., 582; 1 Wils., 134; Plow., 368 to 372; Stra., 556; 3 Bac. Ab., 655; L. Ray., 289; Co. Litt., 246 a, 259 a; 8 Rep., 100 b; Litt., 441; Cro. Jac., 101; 4 Term Rep., 310; Shep. Touch., 30; 4 Term 306, in a note; 2 Atk., 333; Co. Litt., 353 b.
NOTE. — The position that the number of the patents or grants, when they bear date on the same day, may be considered in ascertaining their priority, seems to have been doubted by WILLIAMS, J., in Foreman v.Tyson, post, 496, though HAYWOOD, J., still continued of the opinion that the number should have some weight in the absence of other evidence of priority. This opinion of HAYWOOD, J., appears to have been approved inRiddick v. Legget, 7 N.C. 539, though in that case the grant of the lowest number was made to yield to a strong circumstance against it, to wit, that the grant called for the lands mentioned in the other grant. Upon the question, what kind of possession is necessary to give title under the act of limitations, see the note to Strudwick v. Shaw, ante, 5, and the case there referred to; and particularly, as to the commencement of the possession being bona fide, see Riddick v. Legget cited above, and McRee v.Alexander, 10 N.C. 322. That where the statute of limitations once begins to run, nothing will impede its progress, is now well settled. SeeAnonymous, post, 416; Cobham v. Niel, 3 N.C. 5; Pearce v. House, 4 N.C. 722.
Cited: Tyrrell v. Mooney, 5 N.C. 402; Green v. Harman, 15 N.C. 161;Burton v. Carruth, 18 N.C. 3; Loftin v. Cobb, 46 N.C. 410, 411; Morrisv. Hayes, 47 N.C. 96; Williams v. Wallace, 78 N.C. 357; Frisbie v.Marshall, 122 N.C. 764; Dobbins v. Dobbins, 141 N.C. 219.